Taliaferro, J.
In this case, Wright Williams & Co. are sued for ¡jp750, the amount of a draft drawn upon them in March. 1858, by Sarah Miller, in favor of the plaintiffs.
The defense is, that defendants received the draft in the course of business, from R. N. Downing, of Vicksburg, Mississippi, the holder, under the blank endorsement of plaintiff, and with instructions from Downing to place the proceeds to his credit; which was done.
R. N. Downing in 1853, was a merchant of Vicksburg, having extensive business transactions with Wright, Williams & Go., of New Orleans. He had a large running account with them; was in the habit of drawing bills upon them, and of shipping cotton, and remitting bills, etc., to them 1o stand to his credit. The plaintiffs, -who had no business transactions with the defendants, received the draft in question from Sarah Miller, whose factors the defendants were at that time. 'About the 22d of March, 1858. plaintiffs delivered the draft to Oliver H. Perry, the book-keeper of Downing, requesting Perry to send the draft to Wright, Williams & Co., with instructions to hold the proceeds to their order. Perry handed over the draft to Downing, who, it seems, enclosed it to Wright, Williams <fc Co., on the 29th of March.
It will be proper here to notice two bills of exceptions taken by tlie defendants in the course of the trial. In the first, they allege the incotnpetency of Perry, as a witness, on the ground of his liability lo the plaintiff, arising from Ms having transcended Ms agency by delivering the draft to Downing for transmission, when, by the express terms of the agency, he could only execute that trust himself.
This objection would have much force, if the subsequent course of the plaintiffs did not amount to an approval of the act. The doctrine is that, “if an agent exceed Ms powers, and any loss ensue, that loss will fall on Mm. However, if Ms principal subsequently recognize his departure from the letter of his instructions he is exonerated; for omnis ralihabitio retro trahitur et mandato priori CEcpdparalur. And such a recognition maybe inferred from the employer’s conduct. Smith’s Mercantile law, page 147. Story on Agency, page 283, $ 253, Greenleaf on Evidence, vol. 2, § 67.
*92 We find that the plaintiffs, in this case, when they ascertained that the proceeds of their draft had been misappropriated, wrote from Tennessee;, two letters to Downing, one in June, the other in July of the same year, urging him to pay them the amount of the draft, as they were much in need of money. Downing died in the month of September following, leaving his estate insolvent. In June, 1856, nearly three years after, the plaintiffs instituted the present suit against Wright, Williams & Co. We conclude, from these facts, that the plaintiffs ratified the act of their agent, and exonerated him. The exception was therefore properly overruled.
The second bill of exceptions is to the exclusion, by the Court, of various statements of the witness, Outlaw, in regard to the contents of certain letters, and the opinion of the witness touching their import, etc. When this testimony was offered, and objected to as secondary, inasmuch as it refers to letters which are in writing, the defendants thereupon offered to produce from their letter-bools copies of certain letters referred to in the testimony of the witness, as soon as the letters could be procured from their counting-house. It was further objected, that the defendants could not use their own letters to make evidence in their own behalf.
The Court states its reasons for sustaining the objections to be, that the testimony is illegal, and that no letters were before the Court.
We think the exception was correctly sustained. The defendants could not avail themselves of their own letters as evidence, unless the letters had been called for by plaintiffs, to establish some fact against them. 1st Greenleaf, \ 563. A fortiori, they could not prove their contents b'y parol. It is also apparent from the record, that the matters sought to be proved by the testimony offered are foreign to the issues raised by the pleadings.
On the trial of the case, the plaintiffs took orders subpoena duces tecum against defendants to produce the letters to them from Downing under date of March 29th, 1853, in which the draft was enclosed, and, also, to produce the letter-book of Downing, which they supposed to be in defendants’ possession. The defendants answered that no such letter as the one called for could be found, and that the letter-book of Downing was not in their possession. The testimony of Outlaw, a witness on the part of defendants, and a clerk at the time in the house of Wright, Williams & Co., is full in regard to the letter. Upon his examination-in-chief he said: “I have looked carefullyfor any letter from Downing, enclosing the draft referred to, and do not find any. The draft may havé been delivered personally, or have been enclosed in a letter. I see by my own entries, that it was placed at the time stated to the credit of Downing.” Upon cross-examination he said: “I saw the letter from Downing, which enclosed the draft described in my previous evidence. I do not recollect the language of that letter; it is too long a time; it was in 1853. I do not recollect its purport. I have looked for this letter since I have been in the city this trip, but I could not find it. It is usual for defendants to keep such letters, but some how or other it has been taken away. ” In relation to Downing’s business, the witness said: “Downing was always largely a debtor in account with defendants; he was always largely indebted to defendants, and is still indebted to them. Downing died a bankrupt.”
The witness, Perry, was twice examined in the progress of this case; *93 first in January, 1857, under commission; and afterwards, in March, 1859, Ms deposition was taken in New Orleans by consent. Upon Ms first examination, he said he had access to Downing’s letter-book, and he annexed to one of his answers a copy of the letter of March 29th, 1853, in which the draft was transmitted by Downing to the defendants. At the last examination, he stated that he had then recently endeavored at Yicksburg to get' the letter-book of Downing, but was informed by the head clerk of the house of Allen, Wright & Co., that it had been sent to Wright, Allen & Co. of New Orleans. The letter is of considerable length, embracing various business matters, and the concluding paragraph relates to the draft as follows: “ I was not aware of any draft in our possession drawn by S. Miller, until the reception of your letter, when I was informed by Mr. Perry, my book-keeper, that it was account C. A. & J. S. Merritt, and that he had enclosed the letter of advice in mine of the 22d inst. The draft he did not send, as it was not endorsed. I enclose the same to you now, and if paid, to credit of the Merritts, who will draw on you for same. The drawer is a widow lady, living near Lake Providence, and was drawn here by her son, who stated the funds were in your hands. Tours truly, R. N. Downing.”
The introduction of this sworn copy from the letter-book of Downing was objected to on the ground that being a copy of a copy, it was inadmissible. Further objections were made to the statements of the witness as to the instructions given by Downing to Wright, Williams & Co., as these instructions were in writing. It is seen that plaintiffs called for the production of the original letter of Downing, in which the draft was sent, a letter which it is clearly proved was in the possession of the defendants, and they failed to produce it or account for its disappearance. It is also seen that efforts were made to produce the letter-book of Downing, but without effect. Upon a foundation thus broad, we think the plaintiffs had the right to prove by parol the contents of the necessary letter, and in connection with it to show the sworn copy taken from the letter-book. The witness swears directly, that the letter of the 29th of March, contained the instructions to defendants to place the proceeds of the draft to the credit of the Merritts; and that the copy of that letter in the letter-book showed the original to have been written by Downing, with whose handwriting the witness was well acquainted.
Without the preparatory steps necessary to enable the plaintiffs to prove the contents of the letter by parol, the testimony of the witness that he delivered the draft to Downing, with instructions to advise the defendants to place the proceeds to the credit of the plaintiffs, would raise the presumption thatDowning had complied with these instructions. The evidence adduced leaves no doubt that he did so.
It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.